ROSAMOND RASMUSSEN ET AL., APPELLANTS, v. TRICO FEED MILLS, APPELLEE.

29 N. W. 2d 641

Filed November 14, 1947.    No. 32309.

B. H. Bracken and Fred S. Martin, for appellants.

Harold A. Prince, for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

Appellants seek reversal of the district court's judgment of dismissal, affirming on appeal a like result by the Nebraska Workmen's Compensation Court in a compensation case. Recovery is sought for the death of George

Rasmussen, occurring while he was engaged in work at the Trico Feed Mills. The Trico Feed Mills was a partnership, composed of three men, each of whom had an equal investment. Rasmussen was one of the partners. Of the partners, Rasmussen alone devoted his time to the enterprise. He was the general manager. For this he received $250 per month in addition to his equal share of the profits. The $250 per month was charged as an expense item in the semi-annual partnership accounting. The determining question is: Was Rasmussen an employee of Trico Feed Mills? If he was, the appellants are entitled to recover.

Ordinarily a working partner is not entitled to compensation for injuries suffered while engaged in work and labor incident to the operation of the business. Ellis v. Joseph Ellis & Co., (Eng.) 1 (1905) K. B. 324; LeClear v. Smith, 207 App. Div. 71, 202 N. Y. Supp. 514; Auten v. Unemployment Compensation Commission, 310 Mich. 453, 17 N. W. 2d 249; Chambers v. Macon Wholesale Grocer Co., 334 Mo. 1215, 70 S. W. 2d 884; Dezendorf v. National Casualty Co. (La. App.) 171 So. 160; In re Montgomery & Son, 91 Ind. App. 21, 169 N. E. 879; Chandler v. Harris, 47 Ga. App. 535, 171 S. E. 174; annotations to 15 A. L. R. 1288, 25 A. L. R. 376, 44 A. L. R. 1217, 47 A. L. R. 843, 81 A. L. R. 654, and 137 A. L. R. 6. Only Oklahoma appears as a dissent to this weight of authority. Ohio Drilling Co. v. State Industrial Commission, 86 Okla. 139, 207 P. 314. In the 25 years since that decision no other state than Oklahoma has seen fit to approve it; some have criticized it as unsound. United States Fidelity & Guarantee Co. et al., v. Neal, 188 Ga. 105, 3 S. E. 2d 80; Chambers v. Macon Wholesale Grocer Co., *supra*.

Various reasons compel the courts to reach the conclusion that an injured working partner cannot recover, but these may be summed up in what is said by the California court in Cooper v. Industrial Accident Commission, 177 Cal. 685, 171 P. 684: "* * * the law rela-

tive to compensation as between master and servant, or employer and employee for injuries suffered by the latter, contemplates two persons standing in this opposed relation, and not the anomaly of one person occupying the dual relation of master and servant, employer and employee, plaintiff and defendant, person entitled to a judgment or award in his favor and person bound to pay a part thereof out of his own proportionate share of the partnership property and the balance, amounting possibly to the whole thereof, out of his own individual estate. Evidently the Workmen's Compensation Act did not contemplate these anomalies in its ample and detailed provisions for compensation to injured workmen and to those dependent upon them."

As deviating from this general rule appellants present the partnership as an entity in Nebraska and the statutory definition of employee, and reason that because of his "compensation for such services" Rasmussen was an employee of the partnership. Our statute, section 48-115, R. S. 1943, defines an employee to be "Every person in the service of an employer who is engaged in any trade, occupation, business, * * * under any contract of hire, * * *." For many purposes a partnership in Nebraska is an entity distinct from the parties composing it. Richards v. Leveille, 44 Neb. 38, 62 N. W. 304; Campbell v. Farmers & Merchants Bank of Elk Creek, 49 Neb. 143, 68 N. W. 344; Clay, Robinson & Co. v. Douglas County, 88 Neb. 363, 129 N. W. 548; § 67-306, R. S. 1943. In the case at bar, Rasmussen was the general manager. His relationship to the business and to his partners was fixed by the partnership contract. The identity, powers, and liabilities of the partners are not lost in the partnership entity (Uniform Partnership Act, art. 3, § 67-301 et seq., R. S. 1943), and it is clear that the partnership contract is not with the entity, but with the individuals.

Here the partnership contract provided that Rasmussen should be active manager and as such devote all of

his time to the business. For this he was to receive $250 per month "until a different amount is agreed upon by the parties hereto." The other partners were not required to devote any time. Rasmussen was experienced in conducting a grain elevator and in milling and mixing feeds; the business of the partnership was to be dehydrating, milling, and mixing feeds all according to the partnership contract. He was given full power to conduct the business about as he chose, even to the extent of borrowing as much as $5,000 to conduct its activities. Eventually he had approximately 20 employees whom he superintended. The $250 per month was disposed of in the partnership contract in a semi-annual accounting, the contract providing: "In preparing such account, there shall be charged to the expense account the salary paid to the first party and all other expenses of the business, and also all losses and other charges incident or necessary to the carrying on of the partnership, but no expenditures made in the acquisition of capital goods." This pay for his time was but a practical accounting-means of off-setting the failure of the other two partners to devote their time to the business and was due to Rasmussen as a member of the partnership. As said in the Ellis case, *supra,* it is but "a mode of adjusting the amount that must be taken to have been contributed to the partnership assets by a partner who has made what is really a contribution in kind," and this, regardless of whether the payment comes from profits or general assets.

Such partnership contract is usual in practice and experience. In common comprehension the relationship of the parties would not be changed; the working partner would still be regarded as an employer. The multitude of cases decided all one way attest the soundness of the controlling elementary principle. But observe Rasmussen's own interpretation of his status. He had practically sole control of the business and yet, without knowledge of his partners, did not include a pre-

mium for himself in the compensation insurance. He made no payments in social security tax for himself as an employee. His failure to deduct the $250 per month as an expense item in making out income tax returns may have been due to the revenue department's refusal to consider such as deductible, and therefore should carry no weight. But it must never have occurred to Rasmussen that he was in any sense an employee, and his interpretation, agreeing with current thought, should be some index to his status.

Analyzing the work Rasmussen did as a test, no evidence appears, and probably none can be shown, that any of his work and all the time he devoted to the enterprise was not that contemplated by the title of "general manager." If placing a belt on a motor, the act which resulted in his death, was outside of the scope of a general manager's work, it was not work for which he was separately paid. Nor did the $250 per month allowed to him in the contract require any work other than that in which he represented himself and his partners in the furtherance of the business and as fixed in the contract by which the partnership arose.

The statutory definition speaks of "in the service of an employer." § 48-115, R. S. 1943. But the statutory definition contemplates two persons, the employer and the employee, the master and the servant. It does not contemplate a dual relationship in one.

Appellants are not entitled to recover. The decision and judgment of the district court is right and is affirmed.

AFFIRMED.